COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-04-349-CR


CHARLES GLEN HYDE                                                            APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

------------

OPINION

------------
        Appellant was charged by information with the misdemeanor offense of
assault, and he was convicted by a jury. He appeals in two issues. The first
is whether the trial court erred by denying Appellant’s requested jury instruction
regarding consent as a defense to assaultive conduct under Texas Penal Code
section 22.06. The second is whether the trial court erred by refusing to allow
Appellant to cross-examine the complainant, John R. Davis, about a pending
civil suit that Davis brought against Appellant for the same incident alleged in
the information. Because we find no reversible error, we will affirm.
        Appellant’s theory of defense was partly to contrast his own reputation
and character with that of Davis and try to persuade the jury that because of
an ongoing civil dispute between them, Davis had a motive to testify falsely. 
Appellant urged that he was defending himself and that Davis consented to the
assault.
        Appellant owns and operates an airport at Roanoke, Texas where he sells
airport lots and charges a license fee for use of the runway. He contends that
his dispute with Davis arose when Davis bought land at the airport, failed to
pay the license fee, but wanted to use the runway anyway. Appellant testified
that on April 14, 2002 he found a dog on the airport property and had to drive
by Davis’s house to take the dog home. Appellant said he saw Davis standing
in a ditch by the road, so Appellant stopped his truck and Davis started to argue
and use profanity about their property dispute. On direct examination,
Appellant told the jury that Davis “crunched down like he was going to hit me. 
I put up my hands, blocked his hand, hit him on top of the head, kicked him in
the butt, and he turned around to come back at me. I hit him again in the side
of the face.” When asked why he hit Davis, Appellant testified, “I felt he was
getting ready to strike me.” Appellant also testified that immediately before the
fist fight, he was thinking that on two previous occasions Davis had threatened
to fight him. Davis testified on direct examination that Appellant stopped his
truck, got out and “raced” toward him, and was “at me” within a “second or
two.” Davis stated he told Appellant he did not want to fight, but Appellant hit
and kicked him anyway. Davis said that Appellant “hopped like a boxer” during
the fight, and that Davis lost two teeth from the first blow Appellant struck. 
Davis also suffered a black eye.
        Two witnesses saw the fight and testified at trial. The first was Roger
Johnson, who had been driving with his wife to look at his airplane that was
parked in a hanger at the airport. Johnson told the jury he saw Appellant stop
his truck, get out of it, and begin “yelling” and “hollering” at Davis. When
asked whether Davis made “any threatening gestures” toward Appellant,
Johnson testified “Not that I could see. He [Davis] looked -- I mean, he looked
kind of like he was hollering back, and the other guy [Appellant] was making
more the aggressive physical moves, grabbed [Davis] and started hitting him. 
Hit him a couple of times.” He also testified that Appellant hit Davis a “couple
times, twice at least, in the face.”
        The second witness, Susan Johnson, testified that from the vehicle she
then occupied with her husband, she saw Appellant stop his truck, get out,
come “over into the grass and after yelling some words and some dialogue back
and forth, [Appellant] punched the man that was standing in the lawn.” She
told the jury that Appellant “crossed into the grass and was yelling something
at [Davis] and then kind of walked briskly towards [Davis].” When asked
whether she had seen “any threatening movement” by Davis, Susan Johnson
testified, “No. I did not.” No one else saw the fight.
        The State argues that the evidence did not raise the defensive theory of
consent to assault. We agree. There is no evidence that Appellant held a
reasonable belief that Davis consented to being hit in the face with Appellant’s
fist or that Appellant’s own conduct of acting in that manner did not threaten
serious bodily injury. See Tex. Penal Code Ann. § 22.06 (Vernon 2003). See
also id. § 1.07(11) (Vernon Supp. 2004-05) (“consent” means “assent in fact,
whether express or apparent”). Accordingly, the trial court did not err by
refusing to instruct the jury on the defense that Davis consented to the assault. 
We overrule Appellant’s first issue.
        In his second issue, Appellant asserts that the trial court violated his Sixth
Amendment right to cross-examine Davis about a civil lawsuit he had filed
against Appellant. See U.S. Const. amend. VI; Hoyos v. State, 982 S.W.2d
419, 420-21 (Tex. Crim. App. 1998). The State concedes that the trial court
should have allowed the cross-examination but argues that Appellant was not
harmed by the trial court’s refusal to permit it. A violation of rights afforded by
the Sixth Amendment is subject to a harmless error analysis. Delaware v. Van
Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986). Initially, we must
assume that the damaging potential of the cross-examination was fully realized. 
Id. If it was, we must perform our review under these factors:
        (1)The importance of the witness’s testimony in the prosecution’s case;
        (2) Whether the testimony was cumulative;
        (3) The presence or absence of evidence corroborating the testimony of
the witness on material points;

        (4) The extent of the cross-examination otherwise permitted; and
        (5) The overall strength of the prosecution’s case.
Id. Then, we must determine whether the error was harmless beyond a
reasonable doubt. See Tex. R. App. P. 44.2(a).
        Davis reported the assault to 9-1-1 within minutes after it happened and
within hours gave a statement about it to Deputy Lemaire Approximately ten
months after the fight, Davis filed his civil lawsuit seeking damages from
Appellant. However, the record does not establish that the mere filing of this
lawsuit caused Davis to change his testimony at the trial of this criminal case. 
In fact, his testimony is essentially the same as his statement to Deputy
Lemaire. The State had two eyewitnesses to the fight who testified, so Davis’s
testimony was not necessary to obtain a conviction. The disinterested
testimony of the two eyewitnesses supported the prosecution’s theory of the
case. Appellant’s own testimony affirmed that he kicked Davis during the fight. 
The photographs Deputy Lemaire took after Davis was treated at the hospital
corroborated the nature and intensity of the attack by Appellant. Davis’s loss
of two teeth confirmed his story of the damage done by Appellant’s first blow. 
The prosecution’s case at trial was strong, so that the lack of cross-examination of Davis about his civil lawsuit was not a decisive factor in the jury
finding Appellant guilty of assault. We overrule Appellant’s second issue.
        Having carefully considered and overruled each of Appellant’s issues, we
affirm the trial court’s judgment.
 
                                                                  DIXON W. HOLMAN
                                                                  JUSTICE

PANEL B: HOLMAN, LIVINGSTON, and GARDNER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 4, 2005